UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>TRAVELL THOMAS,<br><br>               Defendant. | 15 Cr. 667-5 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

      Defendant Travell Thomas, who is currently incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"), has applied for compassionate release, in the form of immediate resentencing to a period of time served with a condition of home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #596, 599, 601, 603, 604, 605). Mr. Thomas principally contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of pre-existing medical conditions. The Government opposes this motion. (Dkt. #598). As set forth in the remainder of this Order, the Court denies Mr. Thomas's motion for compassionate release.

## BACKGROUND

      This case has an extensive procedural history, which has been detailed by the Court in prior opinions regarding Mr. Thomas and his co-defendants, which opinions are incorporated herein by reference. *See United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF), 2020 WL 2836781 (S.D.N.Y. June 1, 2020); *Thomas* v. *United States*, Nos. 15 Cr. 667-10 (KPF) and 17 Civ. 6877 (KPF), 2020 WL 1285622 (S.D.N.Y. Mar. 18, 2020); *Thomas* v. *United States*, Nos. 15

Cr. 667-5 (KPF) and 18 Civ. 2772 (KPF), 2020 WL 1243803 (S.D.N.Y. Mar. 16, 2020); *Sessum* v. *United States*, No. 15 Cr. 667-6 (KPF), 2020 WL 1243783 (S.D.N.Y. Mar. 16, 2020).  In brief, Mr. Thomas and fourteen co-defendants were charged in 2015 with wire fraud and conspiracy to commit wire fraud arising out of their conduct at the Buffalo-based debt collection company Four Star Resolution and several related entities (collectively, "Four Star").  (Dkt. #14).  Evidence presented to the Court over the course of numerous sentencing proceedings confirmed that Mr. Thomas was the co-owner, Chief Executive Officer, and President of Four Star; as a result of his positions in the company, the conduct he oversaw, and his own conduct, Mr. Thomas was one of the most culpable of the defendants charged.  (*See generally* Revised Final Presentence Investigation Report (Dkt. #363 ("PSR")) ¶¶ 19-73).  This conduct included: (i) overseeing dozens of debt collectors at Four Star's debt collection offices in Buffalo; (ii) drafting, approving, and disseminating collection scripts to Four Star employees that were filled with misrepresentations and omissions; (iii) falsely inflating debt balances owed by consumers, including "juicing" existing balances and double collecting of debts; (iv) overseeing false mailing campaigns to consumers; (v) organizing and overseeing training sessions at which debt collectors were trained on how to make misrepresentations on the phone;  (vi) testifying falsely under oath at a deposition conducted by the New York Attorney General's Office; and (vii) counseling at least one employee to withhold materials from production in response to a grand jury subpoena.

(*Id.*).  During the period of the charged conspiracy, Four Star entities collected more than $31 million.  (*Id.* at ¶ 62).

On November 1, 2016, Mr. Thomas pleaded guilty pursuant to a plea agreement with the Government in which, among other things, Mr. Thomas waived his right to appeal or to file a collateral challenge to any sentence of imprisonment within or below the stipulated range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 151 to 188 months' imprisonment.  (Dkt. #326 (plea transcript)).  At sentencing on April 20, 2017, the Court varied downwardly substantially from the Guidelines range and imposed an aggregate term of 100 months' imprisonment.  (Dkt. #373 (judgment), 387 (sentencing transcript ("Sent. Tr."))).  In explaining the rationale for the sentence it imposed, the Court explained:

> There are a lot of arguments that were raised very well in both the written and oral presentations, and I do understand the concept that has been suggested by Judges Rakoff and Gle[e]son, that loss in this context is not a proxy for culpability or should not be a proxy for culpability.  I do find this case different from some of those because this was a process of accretion, by which many people over a long period of time were defrauded of funds.
>
> ***
>
> Thinking about all the 3553(a) factors, I am impressed most by the offense conduct.  It is aberrant in the sense it is at odds with much of what Mr. Thomas has done with his life, but it is galling by any metric, whether I use the number of victims, the egregiousness of the statements made, the number of individuals involved in the conspiracy, by any metric this is an extraordinarily bad scheme and it [wreaked] havoc on the lives of people.  As noted, there were chances not to engage in

> it or to stop, but instead even after civil authorities were involved, he continued for three years.
>
> Moving to the issue of deterrence, I do believe that specific deterrence is satisfied. Mr. Thomas is not going to engage in this conduct again, I take him at his word, but there is an issue as well of general deterrence, and again I think that general deterrence is not served by a lesser sentence. I have varied one-third if not more from the applicable guidelines range. Any more, and I run the risk of suggesting this isn't a serious offense.
>
> \*\*\*
>
> [S]omething I've thought about is that as a result of Mr. Thomas and Mr. Sessum, I have approximately a dozen other people before me who have felony convictions and most of them with jail sentences. I appreciate, and let's be clear, I am not unmindful of the fact that [the co-defendants] what they did, they were not coerced into doing it except perhaps by a perceived need to deal with their economic circumstances. But Mr. Thomas presented an opportunity for a number of individuals to engage in fraud that just had far-reaching consequences on thousands of other individuals, and that is something I've thought about as well....
>
> So recognizing the support and love that Mr. Thomas has and all of the good things that he has, I can vary downward, but I am varying downward to a term of 100 months concurrently on each count.

(Sent. Tr. 59:8-15, 60:19-61:11, 61:23-62:14).

In contravention of his plea agreement with the Government, Mr. Thomas filed a notice of appeal from his conviction and his sentence. (Dkt. #384). The appeal was subsequently dismissed in August 2017. (Dkt. #405). In March 2018, Mr. Thomas contravened his plea agreement a second time, filing a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, arguing in particular that he had received the ineffective assistance of counsel

4

at the time of his guilty plea and, further, that the conduct in which he had engaged was not criminal. (Dkt. #483). The motion was ultimately denied by the Court by Opinion and Order dated March 16, 2020. *See Thomas*, 2020 WL 1243803. Mr. Thomas filed a notice of appeal to the Second Circuit from the Court's decision; the appeal remains pending, though it is subject to dismissal for failure to comply with court orders. *See Thomas* v. *United States*, No. 20-1351 (2d Cir. April 24, 2020).

Two months month after the Court denied Mr. Thomas's § 2255 motion, he moved for compassionate release. (Dkt. #596). In relevant part, Mr. Thomas argues for immediate release "due to his pre-existing medical conditions and the severe consequences he could suffer if he contracts the virus — extraordinary and compelling reasons to warrant a reduction in his sentence." (*Id.* at 3). The Government opposes Mr. Thomas's motion. (Dkt. #598).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In a recent case, however, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling."

6

*United States* v. *Brooker*, — F.3d —, No. 19-3218-cr, 2020 WL 5739712, at *6-7 (2d Cir. Sept. 25, 2020); *see also United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release.").[1] That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it will look to it for guidance. *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

Even if a court determines that "extraordinary and compelling reasons" exist, it must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Harris*, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020). In this regard, the Court again looks to, but does not consider itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if "[t]he defendant is not a

---

[1] The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion. In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *United States* v. *Brooker*, — F.3d —, No. 19-3218-cr, 2020 WL 5739712, at *8 (2d Cir. Sept. 25, 2020).

7

danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).[2]

## DISCUSSION

Mr. Thomas's motion is properly before the Court, his administrative remedies having been exhausted when the BOP denied his request on or about May 19, 2020. (Dkt. #596 at 4). The issue at hand is whether Mr. Thomas has identified "extraordinary and compelling reasons" warranting his release. The Court finds that he has not.

As noted, Mr. Thomas argues that the conditions of his incarceration at FPC Loretto place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the nature of his confinement at the facility, his existing medical conditions, and the claimed inability of prison staff to handle the outbreak. The Court recognizes that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases).

Recognizing the expansive discretion identified by the Second Circuit in *Brooker*, this Court continues to align itself with those courts that have found

---

[2] The § 3142(g) factors are largely duplicative of those in § 3553(a), but also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4).

8

"that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Thomas has not demonstrated the existence of extraordinary and compelling circumstances in this case. Mr. Thomas is 42 years old, which would otherwise place him at a comparatively low risk of hospitalization or death from COVID-19. *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex

(accessed October 28, 2020). Mr. Thomas hastens to add, however, that he "suffers from hyperlipidemia, hypertension and is pre-diabetic"; that he is on medications for the first two conditions; and that his hypertension has not been well managed during his incarceration. (Dkt. #596 at 2).

The Centers for Disease Control and Prevention (the "CDC") has recently revised its analysis of comorbidities, distinguishing conditions that place individuals at higher risk with regard to COVID-19, from conditions that *might* place individuals at higher risk, but for which more study is required. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (accessed October 28, 2020). Reviewing the conditions cited by Mr. Thomas and his counsel, only Mr. Thomas's history of hypertension would fall into the latter category, and his other conditions would not fall into either category.

The Court has reviewed with care Mr. Thomas's BOP medical records, which make clear that Mr. Thomas has worked successfully with BOP medical professionals at multiple facilities to address his health issues. There is nothing to suggest that Mr. Thomas has been unable to care for himself or has been neglected by BOP medical personnel.[3] Instead, Mr. Thomas appears to

---

[3]   That said, the Court noted several entries in the records reflecting Mr. Thomas's refusal to take prescribed medications.

10

have received appropriate medical care while incarcerated.  *See, e.g., Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus).

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities.  *See, e.g., United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020); *United States* v. *Park*, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020).  To that end, this Court has scrutinized the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (last accessed October 28, 2020), as well as the BOP's listing of confirmed cases among inmates and staff at each facility.  As of the date of this Order, the BOP has identified no current cases of COVID-19 among inmates at FCI Loretto and eight current cases among staff; fifty-five inmates and three staff members have recovered from the virus.  On balance, this Court concludes that the danger that Mr. Thomas faces from infection with COVID-19, even accounting for his proffered medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir.

11

2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Thomas's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). As the Court noted at sentencing, Mr. Thomas was the driving force of a massive fraudulent operation that preyed upon consumers in financial straits to the tune of more than $31 million. While the Court does not quibble with the legality of Mr. Thomas's decision to purchase the underlying debts for collection, nearly every facet of Four Star's operations was permeated with fraud, from the training sessions of the debt collectors, to the false scripts that threatened criminal actions, to the inflation of debts, to the lies to government agencies. Mr. Thomas stood at the apex of the scheme, and was necessarily aware of its scope.

Even today, the Court is convinced that Mr. Thomas does not appreciate the seriousness of his conduct. At sentencing, Mr. Thomas spoke at length about his family, his gambling addiction, and the various ways in which he had

"suffered" during his prosecution, but he only gestured at apologizing to the many victims of this offense.  (*See* Sent. Tr. 51:3-56:4).  Then, after receiving a substantial downward variance at sentencing, Mr. Thomas both appealed from and collaterally challenged his conviction and sentence, claiming innocence of his crimes of conviction.  Mr. Thomas continues to proffer baseless motions concerning the Court's jurisdiction to preside over the matter, including arguments in his § 2255 motion regarding Article III injury and standing.  It would undercut the § 3553(a) factors for the Court to allow Mr. Thomas to serve just one-third of a 100-month sentence.  Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Thomas's application based on its contemporaneous consideration of the § 3553(a) factors.[4]

## CONCLUSION

For the foregoing reasons, Defendant Travell Thomas's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 596.

SO ORDERED.

Dated:  October 29, 2020
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[4]  To the extent he has not done so already, Mr. Thomas can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant that relief, however, is reserved to the discretion of the BOP.